IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-00578-REB-KLM

SCOTT MASON,

Plaintiff,

v.

STEVE HARTLEY, Warden, Fremont Correctional Facility
MR. HUGHES, Commander, F.C.F. S.E.R.T.,
C/O FRANCIS, F.C.F. S.E.R.T., and
J. DOE, F.C.F., Health Services Administrator,

Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss the Complaint** [Docket No. 20; Filed June 6, 2011] (the "Motion"). Plaintiff, who is proceeding *pro se*, filed a Response [Docket No. 28] in opposition to the Motion on June 17, 2011. Defendants filed a Reply [Docket No. 29] on July 1, 2011. Pursuant to 28 U.S.C. § 636 (b)(1)(A) and D.C.COLO.LCivR 72.1C., the Motion has been referred to this Court for a recommendation regarding disposition. The Court has reviewed the Motion [#20], Plaintiff's Response [#28], Defendants' Reply [#29], the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court **RECOMMENDS** that the Motion be **GRANTED in part** and **DENIED in part**.

## I. Summary of the Case

At all times relevant to his claims, Plaintiff was an inmate at the Colorado

Department of Corrections ("CDOC") Fremont Correctional Facility ("Fremont"). On March 8, 2011, Plaintiff filed a Complaint [Docket No. 1] pursuant to 42 U.S.C. § 1983 in which he claims that Defendants violated the rights guaranteed to him by the Eighth and Fourteenth Amendments to the United States Constitution by leaving him outside in the prison yard "for more than 7 hours in temperatures close to 100 degrees" during a security sweep of inmates' cells. *Complaint* [#1] at 4.

Plaintiff alleges the following facts as the basis for his claims. Plaintiff states that he suffers from "multiple serious medical conditions, including congestive heart failure, which has resulted in two heart attacks," *id.* at 4, and Graves Disease, "which causes his eyes to bulge in his head," *Response* [#28] at 4. To treat these conditions, Plaintiff has "been prescribed multiple medications including but not limited to: Nitroglycerin; Lopressor; Plavix; Lasix; Zocor; [and] Lisinpril." *Complaint* [#1] at 4. Plaintiff alleges that "more than one of these medications warns users that they should not remain in hot or cold conditions nor should they remain in direct sunlight." *Id.*

Because Plaintiff was permitted to self-administer nitroglycerin, Fremont staff directed him to inform them "whenever he had taken a nitro tablet." *Response* [#28] at 7. Plaintiff alleges that Defendant Francis was part of the Fremont housing staff, and that he told Defendant Francis "on at least two occasions that he had to take a nitro tablet." *Id.* Accordingly, Plaintiff alleges that Defendant Francis "was aware that [he] had a serious heart condition." *Id.* Plaintiff further alleges that information about the severity of his heart condition was available to all Fremont staff, including Defendant Hughes, because "each living unit keeps logs listing . . . relevant medical information" about each inmate. *Id.* at 2.

In July 2009, Fremont staff "conducted a shakedown of Plaintiff's living unit to ensure

property compliance." *Complaint* [#1] at 4. All prisoners were "taken to the yard where they remained for more than 7 hours in temperatures close to 100 degrees." *Id.* Plaintiff states that the extended exposure to the heat and sun made him feel "unwell." *Id.* at 5. He alleges that both he and other inmates "informed Defendants Hughes and Francis that [he] was not feeling well and that his legs [felt like they] were on fire." *Response* [#28] at 3. He further alleges that he "informed [Defendants Hughes and Francis] of his need for medical attention," but his requests were ignored. *Complaint* [#1] at 4. Plaintiff states that Defendant Hughes responded to his concerns simply by saying several times, "'Let me know if you are going to fall out.'" *Id.* at 5. Plaintiff alleges that "as a result of [his] prolonged stay in the direct sun and heat, [he] developed a severe skin condition" which might necessitate "amputation of one or both of his legs." *Id.* at 4. Plaintiff avers that this condition has been diagnosed by CDOC doctors as "venus stasis dermitis." *Response* [#28] at 4.

Defendants contend that Plaintiff's Complaint [#1] should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for the following reasons: (1) Plaintiff failed to state a violation of the Eighth Amendment; (2) Plaintiff failed to allege that Defendant Hartley personally participated in the purported Eighth Amendment violation; and (3) Defendants are entitled to qualified immunity from liability in their individual capacities.

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed R. Civ. P. 12(b)(6) (A complaint may be dismissed for "failure to state a claim upon which relief can

be granted.”). To withstand a motion to dismiss pursuant to Rule 12(b)(6), “a complaint must contain enough allegations of fact ‘to state a claim to relief that is plausible on its face.’” *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (“The complaint must plead sufficient facts, taken as true, to provide ‘plausible grounds’ that discovery will reveal evidence to support the plaintiff’s allegations.” (quoting *Twombly*, 550 U.S. at 570)). “A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009). “A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.” *Id.* (internal quotation marks omitted). “The court’s function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff’s complaint alone is legally sufficient to state a claim for which relief may be granted.” *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

When considering Plaintiff’s Complaint [#1] and Response [#28], the Court is mindful that it must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be a *pro se* litigant’s advocate, nor should the Court “supply additional factual allegations to round out [a *pro se* litigant’s] complaint or construct a legal theory on [his] behalf.” *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*,

935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## III. Analysis

Defendants mount a facial attack on Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Accordingly, the Court accepts the facts alleged in the Complaint as true for the purpose of resolving the Motion. *See Holt*, 46 F.3d at 1002; *Mobley*, 40 F.3d at 340; *Motion* [#20] at 3 (stating that the Court "must accept all well-pled factual allegations in the Complaint as true and resolve all reasonable inferences in [Plaintiff's] favor").

### A. Plaintiff's Claims Against Defendant Hartley and the Fremont Health Services Administrator [1]

At all times relevant to the Complaint, Hartley was the warden at Fremont. *Complaint* [#1] at 1; *Motion* [#20] at 9. Defendants contend that Plaintiff's claims against Hartley must be dismissed because Plaintiff failed to allege that Hartley personally participated in the purported Eighth Amendment violation. *Motion* [#20] at 8-9. Because Defendant Fremont Health Services Administrator ("HSA") was also in a supervisory position at Fremont, the Court also addresses whether Plaintiff has adequately alleged her personal participation. *See supra* note 1.

"Individual liability under [42 U.S.C.] § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir.

---

[1] Defendants' Motion was not filed on behalf of "un-served, John Doe parties," i.e., the Fremont Health Services Administrator. *Motion* [#20] at 1. However, the Court has the discretion to, "on its own motion, . . . dismiss any action brought with respect to prison conditions under §1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action . . . fails to state a claim upon which relief can be granted." 42 U.S.C. § 1997e(c)(1); *see, e.g., Vigil v. Jones*, No. 09-cv-01676-PAB-KLM, 2010 WL 3703582, at *9 n.13 (D. Colo. Aug 9., 2010) (unreported decision).

1997) (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996)); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a Section 1983 claim." (citations omitted)). A defendant was personally involved in an alleged constitutional violation only if there is an "affirmative link" between his conduct and the alleged violation. *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001). Because of the "affirmative link" requirement, a defendant in a position of general supervisory authority cannot be held vicariously liable for alleged constitutional violations committed by his subordinates. *Serna v. Colo. Dep't of Corr*., 455 F.3d 1146, 1151 (10th Cir. 2006) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights."); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) ("[S]upervisor status by itself is insufficient to support liability." (citing *Rizzo v. Goode*, 423 U.S. 362, 376 (1976))); *Ruark v. Solano*, 928 F.2d 947, 950 (10th Cir. 1991) ("'[T]here is no concept of strict supervisor liability under section 1983.'" (quoting *Harris v. Greer*, 750 F.2d 617, 618 (7th Cir. 1984))); *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983) ("A defendant cannot be liable under a *respondeat superior* theory in a section 1983 case." (citing *McClelland v. Facteau*, 610 F.2d 693 (10th Cir. 1979))).

Courts have explained that a defendant in a supervisory position was personally involved in an alleged constitutional violation committed by his subordinates in two situations. First, the supervisor was personally involved when he personally directed his subordinates to take the action that resulted in the alleged constitutional violation. *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992). Second, the supervisor was personally involved when he had actual knowledge that his subordinates

were committing the alleged constitutional violation and he acquiesced in its commission. *Id.* (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) (stating that supervisor liability requires "allegations of personal direction or of actual knowledge and acquiescence")); *see also id.* at 1399 n.11 (To show an affirmative link between the defendant supervisor's conduct and unconstitutional behavior by his subordinates, a plaintiff must establish "an intentional, conscious, and deliberate act by the defendant participating in, or knowingly acquiescing in, the unconstitutional behavior."). The Court of Appeals for the Tenth Circuit has explained personal involvement by knowing acquiescence as follows: "In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior." *Serna*, 455 F.3d at 1151.

The Supreme Court has recently called into question the notion of personal involvement by knowing acquiescence. In *Ashcroft v. Iqbal*, 129 S. Ct. at 1949, the Court suggested that the simple fact that a supervisor knew of and acquiesced in a constitutional violation committed by his subordinates does not establish that he was personally involved in the violation. In *Iqbal*, the Court considered a federal detainee's claim that his designation as "a person of high interest" was the result of unconstitutional discrimination on the basis of his race, religion, or national origin. *Id.* at 1944. The detainee asserted his discrimination claim against, *inter alios*, the Attorney General of the United States and the Director of the Federal Bureau of Investigation (FBI). *Id.* He argued that these senior officials established the policy and procedures implemented by the prison officials who actually made the allegedly discriminatory designation. *Id.* ("The pleading names [former Attorney General] Ashcroft as the 'principal architect' of the policy, and identifies [Director of the FBI] Mueller as 'instrumental in its adoption, promulgation, and implementation.'"

(citations omitted)). The Supreme Court held as follows:

> [Respondent] argues that, under a theory of "supervisory liability," petitioners can be liable for "knowledge and acquiescence in their subordinates' use of discriminatory criteria to make classification decisions among detainees." That is to say, respondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. We reject this argument. Respondent's conception of "supervisory liability" is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents. In a § 1983 suit or a *Bivens* action–where masters do not answer for the torts of their servants–the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose *Bivens* liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities.

*Id.* at 1949.

*Iqbal* has been interpreted by at least two Courts of Appeals as narrowing the scope of what constitutes "personal involvement" by a supervisor in an alleged constitutional violation committed by his subordinates:

> [G]iven a recent Supreme Court pronouncement, the basic concept of § 1983 . . . supervisory liability itself may no longer be tenable. *See Iqbal*, 129 S. Ct. at 1949 ("In a § 1983 suit or a *Bivens* action–where masters do not answer for the torts of their servants–the term 'supervisory liability' is a misnomer."). After *Iqbal*, circuits that had held supervisors liable when they knew of and acquiesced in the unconstitutional conduct of subordinates have expressed some doubt over the continuing validity of even that limited form of liability. *See Bayer v. Monroe County Children & Youth Servs.*, 577 F.3d 186, 190 n.5 (3d Cir. 2009); *Maldonado v. Fontanes*, 568 F.3d 263, 274 n.7 (1st Cir. 2009).

*Arocho v. Nafziger*, 367 F. App'x 942, 947 n.4 (10th Cir. 2010). Accordingly, to establish that a defendant in a supervisory position was personally involved in an alleged constitutional violation committed by his subordinates, a plaintiff must show that the

defendant did more than simply acquiesce in the violation.[2]

**1. Defendant Hartley**

Defendants argue that Plaintiff provided "no allegations showing that [Hartley] personally participated in [the] incidents at issue, and . . . no allegations showing that [Hartley] was aware of the handling of Plaintiff's complaints that he did not feel well." *Motion* [#20] at 9. Plaintiff attempts to state just one claim against Hartley: "Hartley failed in his duty to protect [inmates] when he allowed a security exercise to go forward without any consideration of how the exercise would or could medically impact prisoners with preexisting health conditions." *Complaint* [#1] at 6. The Court finds that this bare allegation is insufficient to state an Eighth Amendment claim against Hartley. At best, Plaintiff has merely alleged that Hartley acquiesced in the actions of his Fremont subordinates. Plaintiff's one-sentence allegation against Hartley does not suggest that Hartley had either a "purpose" to negatively impact Plaintiff's medical condition, *Iqbal*, 129 S. Ct. at 1949, or a "state of mind" similar to that of Hughes and Francis, who allegedly ignored Plaintiff's medical needs, *Serna*, 455 F.3d at 1151. *See supra* note 2. Plaintiff does not allege that Hartley "personally direct[ed]" Hughes and Francis to ignore his medical needs. *Woodward*, 977 F.2d at 1400. Plaintiff also does not allege that Hartley had "actual

---

[2] The Courts of Appeals have not provided clear guidance regarding precisely what a plaintiff must show to demonstrate more than mere acquiescence by the defendant. But *Iqbal* and *Serna* indicate that the defendant's state of mind is the linchpin of the analysis. In *Iqbal*, the Supreme Court suggested that a defendant who acquiesced in a constitutional violation committed by his subordinates was personally involved in the violation only if his acquiescence was motivated by a "purpose" to allow or further the violation. *See* 129 S. Ct. at 1949. In *Serna*, the Court of Appeals for the Tenth Circuit suggested that a defendant supervisor who acquiesced in a constitutional violation was personally involved in that violation only if he shared the same "state of mind" with his subordinates who actually committed the violation. *See* 455 F.3d at 1151.

knowledge" that Hughes and Francis were not providing him with access to medical care. *Id.*

Because Hartley was a supervisory official and Plaintiff has not alleged any facts that indicate that it might be possible for him to show personal involvement by Hartley in the alleged Eighth Amendment violation if he were given leave to amend his Complaint, the Court recommends that Plaintiff's claim against Hartley be dismissed with prejudice.[3]

**2. The HSA**

Plaintiff asserts that the HSA is "in charge of health and medical services" at Fremont. *Complaint* [#1] at 3. He alleges that the HSA "failed to ensure that medical complaints were addressed during the property compliance shakedown." *Id.* at 7. He

[3] The dismissal of an action "pursuant to Rule 12(b)(6) is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992); *accord Brierly v. Schoenfeld*, 781 F.2d 838 (10th Cir. 1986) (affirming a district court decision to dismiss with prejudice an action brought under 42 U.S.C. § 1983); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice"); *Tepper v. Van Dam*, 974 F.2d 1345, 1992 WL 219037, at *3-4 (10th Cir. Sept. 9, 1992) (unpublished table decision) (relying on *Okusami*, *Brierly*, and *Cortec* to affirm dismissal of an action with prejudice). However, due to heightened concerns when the plaintiff is proceeding *pro se*, dismissal with prejudice is only appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *see also Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.") (citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997))). Even as courts are careful to protect the rights of *pro se* plaintiffs, they typically find that granting the opportunity to amend would be futile. *See, e.g., Arocho v. Nafziger*, 367 F. App'x at 955 (describing a set of circumstances under which giving a plaintiff an opportunity to amend his complaint would not be futile as "unique"); *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise *substantial* issues" (emphasis added)); *but see Gee v. Pacheco*, __ F.3d __, 2010 WL 4909644, at *5 (10th Cir. Oct. 26, 2010) ("[O]rdinarily the dismissal of a *pro se* claim under Rule 12(b)(6) should be without prejudice, and a careful judge will explain the pleading's deficiencies so that a prisoner with a meritorious claim can then submit an adequate complaint." (citations omitted)).

further alleges that "[i]n the days following the shakedown, the HSA made a decision that medical [staff at Fremont] would not see any prisoner complaining of sunburn." *Id.* at 8.

The Court finds that Plaintiff has failed to allege any personal involvement by the HSA in addressing his concerns during the security sweep or in treating any of *his* medical problems that resulted from exposure to heat and sun. The Complaint does not contain factual allegations sufficient to plausibly suggest that the HSA had either a "purpose" to negatively impact Plaintiff's medical condition, *Iqbal*, 129 S. Ct. at 1949, or a "state of mind" similar to that of Hughes and Francis, who allegedly ignored Plaintiff's medical needs, *Serna*, 455 F.3d at 1151. *See supra* note 2. Plaintiff does not allege that the HSA "personally direct[ed]" any subordinates to ignore his medical needs during or after the security exercise. *Woodward*, 977 F.2d at 1400. Importantly, Plaintiff also does not expressly claim to have asked for medical attention after the sweep. He does not state to whom he made requests for medical treatment after the security sweep, and he does not specify when such requests were made. Accordingly, Plaintiff has not explained how the HSA's alleged decision to deny treatment to inmates complaining of sunburns impacted him personally. Plaintiff also has not alleged that the HSA had "actual knowledge" that he required unique medical attention during or after the security sweep.

Because the HSA was a supervisory official and Plaintiff has not alleged any facts that indicate that it might be possible for him to show personal involvement by the HSA in the alleged Eighth Amendment violation if he were given leave to amend his Complaint, the Court recommends that Plaintiff's claim against the HSA be dismissed with prejudice. *See supra* note 3.

### B. Plaintiff's Claims Against Defendants Hughes and Francis

Defendants contend that Plaintiff's Complaint fails to state a claim that Hughes and Francis violated the Eighth Amendment. *Motion* [#20] at 4-8. The Eighth Amendment to the United States Constitution provides that "cruel and unusual punishments" shall not be inflicted. U.S. Const. amend. VIII. Punishments which "involve the unnecessary and wanton infliction of pain" violate this provision. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Because "[a]n inmate must rely on prison authorities to treat his medical needs," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment," *id.* at 104 (quoting *Gregg*, 428 U.S. at 173). To prove a claim of deliberate indifference, a prisoner must establish that (1) he was deprived of a medical need that is, objectively, "sufficiently serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and (2) the defendant knew of and disregarded "an excessive risk to [the prisoner's] health or safety," *Id.* at 837. "A medical need is sufficiently serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (quoting *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.C.N.H. 1977)). A defendant knew of and disregarded an excessive risk to a prisoner's health or safety when he was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," **and he actually drew that inference**. *Farmer*, 511 U.S. at 837. Importantly, "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the [Eighth Amendment]." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Although "an Eighth Amendment claim regarding deliberate indifference to a serious medical need often involves an official's failure to treat a prisoner's serious medical condition properly, it may also arise when a prison official acts with deliberate indifference in preventing a prisoner from receiving treatment or denying him access to medical personnel capable of evaluating the need for treatment." *Haden v. Green*, No. 10-cv-00515-PAB-KMT, 2011 WL 1085328, at *4 (D. Colo. Jan. 12, 2011) (unreported decision).

The Supreme Court has previously addressed an Eighth Amendment claim based in part on the use of exposure to the sun as punishment for disorderly conduct. In *Hope v. Pelzer*, 536 U.S. 730, 737 (2002), the Court ruled that an Eighth Amendment violation occurred when a prisoner was handcuffed to a hitching post and left in the sun without a shirt for seven hours. The Court found that the Eighth Amendment violation was "obvious" because "despite the clear lack of an emergency situation, the [defendants] knowingly subjected [the plaintiff] to a substantial risk of physical harm, to unnecessary pain caused by the handcuffs and the restricted position of confinement for a 7-hour period, to unnecessary exposure to the heat of the sun, to prolonged thirst and taunting, and to a deprivation of bathroom breaks." *Id.*

The circumstances of this case are markedly different from those in *Hope*. Here, Plaintiff was not handcuffed to a hitching post, he was not left shirtless, and he was not singled out for exposure to the sun as punishment. He was allowed bathroom breaks and access to water, and he does not allege that he was taunted. *Response* [#28] at 3-4. Plaintiff's Eighth Amendment claim is based on his unique hypersensitivity to sun exposure caused by medications, his alleged request for medical attention, and Defendants' alleged denial of the request. Accordingly, *Hope* is largely inapposite, and the sufficiency of

Plaintiff's allegations are judged by reference to the rules set forth in *Farmer*.

Defendants do not appear to contest that Plaintiff's alleged hypersensitivity to heat and sun exposure is a sufficiently serious medical need. *See Motion* [#20] at 5 (beginning Defendants' argument with discussion of "the subjective element of a claim for inadequate medical care in violation of the Eighth Amendment" and omitting discussion of the objective element, i.e., whether an alleged medical need is sufficiently serious). Instead, they contend that Plaintiff has not sufficiently alleged that Hughes and Francis knew of and disregarded an excessive risk to Plaintiff's health and safety:

> [T]here are no allegations in the Complaint indicating that [Hughes and Francis] had any awareness of [Plaintiff's] medical conditions or his unique vulnerabilities. By their nature, [Plaintiff's] alleged sensitivities [to heat and sun exposure] are not "obvious." With regard to Hughes, Plaintiff alleges that he told Hughes that he was feeling unwell, but he does not allege that he told Hughes anything about his medical conditions. . . . [I]n the absence of any information from Plaintiff, Hughes had no reason to suspect that Plaintiff had any unique health problems that made him unusually vulnerable to sunlight or hot temperatures. In addition, Plaintiff alleges that Hughes responded by telling Plaintiff to let him know if he was going to "fall out." . . . Plaintiff does not allege that he ever informed Hughes that he was going to "fall out" or that his condition was serious. As a result, Plaintiff's allegations do not establish that Hughes knew or had reason to know that Plaintiff was at risk of serious injury. . . . Plaintiff's allegations concerning Francis are similar. . . . At most, Plaintiff's allegations may indicate that [Hughes and Francis's] conduct was negligent.

*Id.* at 6-7.

The Court disagrees with Defendants. In the Complaint [#1] and Response [#28], Plaintiff has not precisely alleged what Hughes and Francis subjectively knew about either his hypersensitivity to heat and sun exposure or his medical condition generally at the time of the security sweep. However, if Plaintiff's allegations are given the broadest possible interpretation because of his *pro se* status, they are sufficient at this juncture to support an

inference that Hughes and Francis were aware of Plaintiff's need for immediate medical attention and aware that his condition posed an excessive risk to his health and safety. The Court recognizes that Plaintiff has not expressly pled in a clear fashion that Hughes and Francis knew of and disregarded his medical condition. While this pleading failure may be technically sufficient to justify dismissing Plaintiff's Eighth Amendment claims against Hughes and Francis, it is also easily correctable in an amendment to the Complaint. Accordingly, the Court finds that dismissing Plaintiff's claims and permitting him to re-plead would be inefficient. *See Bayview Loan Servicing, LLC v. Boland*, No. 08-cv-00566-WDM-KLM, 2009 WL 2514154, at *3 (D. Colo. Aug 14, 2009) (unreported decision) (stating that when a procedural mistake is easily correctable, a dismissal "would appear to be a waste of resources" because it would only "delay the action for a period of time, just to be back at [the same] point some time in the future" (quotations omitted)).

Moreover, the Court also finds that Plaintiff has alleged that Hughes and Francis had enough information available to them to make it plausible that they were aware of Plaintiff's serious medical needs in the circumstances. Taken together, the alleged facts that (1) Francis knew Plaintiff had a heart condition and took several medications, (2) Plaintiff complained of feeling unwell and asked for medical attention, (3) other inmates informed Francis that "Plaintiff did not look well and was in pain," and (4) Fremont staff had access to information about the severity of Plaintiff's heart condition because "each living unit keeps logs listing . . . relevant medical information," make it reasonable for the Court to infer that Francis and Hughes *may* have been deliberately indifferent to Plaintiff's medical needs. In short, Plaintiff has pled "sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support [his] allegations." *Shero*, 510 F.3d

at 1200 (quoting *Twombly*, 550 U.S. at 570). Accordingly, Plaintiff is entitled to discovery, and his claims against Hughes and Francis should not be dismissed at this juncture. *See, e.g.*, *Mallory v. Jones*, No. 10-cv-02564-CMA-KMT, 2011 WL 1750234, at *6 (D. Colo. May 3, 2011) (unreported decision) (permitting an Eighth Amendment claim against correctional officers to survive a motion to dismiss when the plaintiff alleged that "Defendants knew that Plaintiff was in distress but, nevertheless, failed to obtain proper and adequate assistance").

## IV. Conclusion

For the foregoing reasons, I respectfully **RECOMMEND** that Defendants' **Motion** [#20] be **GRANTED in part** and **DENIED in part**. Accordingly,

I FURTHER **RECOMMEND** that Plaintiff's claims against Defendants Hartley and the HSA be **DISMISSED with prejudice**.

I FURTHER **RECOMMEND** that Plaintiff's claims against Defendants Hughes and Francis should not be dismissed at this juncture.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this

Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

DATED: July 14, 2011 at Denver, Colorado.

BY THE COURT:

s/ Kristen L. Mix
Kristen L. Mix
United States Magistrate Judge